IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FREDDIE R. ATKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 07 C 5963 |
| v. ) | |
| ) | Chief Judge James F. Holderman |
| R. JAMES NICHOLSON, Secretary of Veterans ) | |
| Affairs, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Freddie Atkins brought this action under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, and the Equal Pay Act, 29 U.S.C. §§ 206 *et seq.,* against R. James Nicholson, the Secretary of Veterans Affairs (the "VA"). In his complaint, Atkins alleged that he was treated differently than a female employee in the same unit who performed the same tasks he performed and that he subsequently was harassed, demeaned, and subjected to a hostile environment in retaliation for complaining about the differential treatment. For the reasons set forth below, the court grants the defendant's motion for summary judgment [25].

Background

The events at issue in this lawsuit took place while Atkins, a federal employee, was working as a housekeeping aid at the Hines VA Medical Center in Hines, Illinois. The facts from the parties' Local Rule 56.1 statements are as follows:

Atkins began working as a housekeeping aid in the 9 East area of Building 200 at the Hines VA Medical Center in approximately 1999 or 2000. In August 2002, Atkins was transferred to 9 West, where he worked until March 2006. According to Atkins, 9 West was a

"step-down unit" where he was required to clean patient monitors that were used to measure vital signs, a duty that Atkins says warranted a WG-3 salary. Atkins' pay grade at all times relevant to this lawsuit was WG-2.

Atkins made three separate complaints to three different VA departments concerning events that occurred while he was assigned to 9 West. First, on March 16, 2006, Atkins contacted a VA Equal Employment Opportunity (EEO) counselor to complain about "discrimination" arising out of a reassignment announced by Sandre Sparks, one of Atkins' supervisors, in early March 2006. Specifically, on or about March 2, 2006, Sparks informed Atkins that his work unit would be moving from 9 West to 10 West due to an upcoming renovation of the ninth floor. Sparks also informed Atkins that he would not be moving to 10 West with his work unit but instead would be reassigned to another area. On or about March 27, 2006, Atkins' work unit, including Atkins, relocated from 9 West to 10 West. Approximately one month later, Atkins was notified by memorandum that he was being reassigned from 10 West to 10 East. Second, on April 6, 2006, Atkins sent an email to the chief of the VA's Environmental Management Section alleging that Sparks harassed Atkins about a personal locker that Atkins kept in the 1074 storage closet. Third, on May 15, 2006, Atkins filed a formal administrative complaint of discrimination with the VA Office of Resolution Management. In his administrative complaint, Atkins alleged three claims: (1) that his original assignment to 9 East in 1999 or 2000 was retaliation for EEO activity by him in 1997 and 1998; (2) that he was subjected to gender discrimination because, when Atkins originally was assigned to 9 East in 1999 or 2000, he replaced a female housekeeping aid, Ella Wright, who was a WG-3, but Atkins was not promoted to WG-3 even though he performed the same or similar duties as Wright; and

2

(3) that his reassignment from 10 West to 10 East in May 2006 was retaliation because it was meant to undo his allegedly improper and retaliatory assignment to a WG-3 area years before.

During the VA's administrative investigation, Atkins also claimed that he had been subjected to a hostile work environment after he contacted the EEO counselor in March 2006. According to Atkins, six specific events constituted a hostile environment: (1) on or about March 31, 2006, Sparks approached Atkins at his locker, asked to inspect his work area, and told Atkins that everything on VA property belonged to the VA; (2) on or about April 7, 2006, Sparks instructed Atkins to dust and wet mop by the elevators at 2:15 p.m., a time when Atkins was preparing to go home; (3) on or about April 20, 2006, Sparks changed Atkins' assignment at 8:15 a.m. even though Atkins had already received a different work assignment from his immediate supervisor earlier that morning; (4) on or about April 21, 2006, Atkins was told by his immediate supervisor, Curtis Holland, that Sparks wanted Atkins to clean up the 1074 storage closet and remove certain items; (5) on May 5, 2006, Sparks issued a memorandum to Atkins stating that he had been absent from his work for 37 minutes without supervisory permission; and (6) on May 24, 2006, Holland issued a second memorandum to Atkins for failure to attend a scheduled training session the day before.

Sparks and Holland responded to Atkins' allegations by affidavit. As to Atkins' discrimination claim, Sparks and Holland explained that Atkins was not paid at the WG-3 level while working in 9 West or earlier because Atkins never applied for a WG-3 position even though he was encouraged to do so by Sparks and other supervisors. Sparks and Holland further explained that Ella Wright was paid at the WG-3 level because she submitted a proper application, went through a panel review process, and was ultimately selected for WG-3 status

through a merit promotion system.  Although Holland admitted that Atkins performed some WG-3 work while in 9 West, he explained that "blending" occurred between WG-3 employees who worked within a specialty unit and the WG-2 employees who worked just outside a specialty unit.  Holland also explained that some confusion existed within management about precisely which areas were WG-3 areas due to changes in management and reorganizations over the years.

Atkins admitted at his deposition that his supervisors encouraged him to apply for a WG-3 position but that he never applied.  Atkins asserts now, however, that he should have been promoted with no action on his part because he was on extended detail.  Hines VA policy provides that a detail is the temporary assignment of an employee to a different position for a specified period, with the employee returning to his or her regular duties at the expiration of the detail.  There is no change in an employee's civil service or pay status while on detail.  When a detail will exceed 45 days, a temporary promotion should be made after the 45th day if the employee meets legal and technical requirements.  When an employee is detailed to a higher grade position for a period of more than ten consecutive work days, he must be temporarily promoted and the employee should be paid for the temporary promotion beginning the first day of the detail.  Managers and supervisors are responsible for keeping details within the shortest practical time limits, ensuring the time limits set forth are not exceeded, arranging details to another service to include other officials administratively concerned, and submitting a "Standard Form 52, Request for Personnel Action," for details for more than 30 days.

As to Atkins' retaliation claim arising from his reassignment from 10 West to 10 East, Sparks explained that reassignment of Atkins was necessary because two other housekeeping

aids with more seniority than Atkins were already working on 10 West and neither of the aids wanted to move. Holland concurred with Sparks' decision to reassign Atkins to 10 East because, Holland explained, Atkins was a WG-2 and had raised an issue about being improperly assigned to a WG-3 area. With Atkins' concerns in mind, reassignment of Atkins from 10 West to 10 East made sense because 10 East was a WG-2 area.

As to Atkins' hostile environment claim, Sparks and Holland explained that Sparks routinely inspected work areas for all of his employees, not just Atkins, in order to make sure that Sparks was getting a good day's work out of them. Sparks and Holland also explained that the 1074 supply closet where Atkins kept his personal locker was not meant for personal use and was needed for housekeeping supplies and equipment. As a result, Sparks directed Atkins to remove his personal locker from the closet and offered him a proper locker on the second floor, but Atkins refused. Sparks and Holland also explained that Atkins' use of the 1074 supply closet was a safety hazard because it contained chemicals and housekeeping equipment but could not be unlocked by anyone other than Atkins if there was a problem.

When asked about Sparks giving Atkins an assignment near the end of his shift on one day and then changing his assignment on another morning, both Sparks and Holland explained that assignment adjustments were commonplace and necessary for Atkins and other workers because of changing circumstances that arise during a shift. Atkins himself agreed that Sparks had changed his assignment and the assignments of other employees on other occasions.

When asked about the memorandum that was issued to Atkins for being absent from work for 37 minutes, Sparks explained that he did not recall the specific incident but noted that he had counseled Atkins several times about coming back late from lunch. Sparks then surmised

5

that he had issued the memorandum as a last resort to get Atkins to change his behavior. Consistent with Sparks recollection, Holland explained that Sparks is an "energetic guy" who "does all employees that way" when they are late or out of their area. Holland also explained that he issued Atkins a second memorandum regarding Atkins' failure to attend a training class because Holland had informed Atkins about the training, told Atkins that it was mandatory, and instructed him to attend. Nevertheless, Atkins failed to attend, so Holland "wrote him up."

After the VA issued a final agency decision finding no discrimination or retaliation, Atkins brought this lawsuit against the VA under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, and the Equal Pay Act, 29 U.S.C. §§ 206 *et seq.* In his complaint, Atkins alleged generally that he was treated differently than female employees in the same unit who performed the same tasks he performed and that he subsequently was harassed, demeaned, and subjected to a hostile environment in retaliation for complaining about the differential treatment. Before the court now is the VA's motion for summary judgment [25].

Analysis

The VA has interpreted Atkins' complaint as asserting four claims—gender discrimination, retaliation, hostile work environment, and a violation of the Equal Pay Act—and argues that it is entitled to summary judgment in its favor on each of those claims because Atkins cannot establish essential elements of the claims. Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its

6

motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 627-28 (7th Cir. 2006). Once a properly supported motion for summary judgment is made, the non-moving party cannot rest on its pleadings but must affirmatively demonstrate by specific factual evidence that there is a genuine issue of material fact requiring trial. *Celotex Corp.*, 477 U.S. at 324; *Keri*, 458 F.3d at 628. Conclusory allegations, "if not supported by the record, will not preclude summary judgment." *Keri*, 458 F.3d at 628 (citing *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997)).

      A.      *Gender Discrimination*

The VA first contends that Atkins has no direct evidence of discrimination and so must proceed under the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The VA then argues that it is entitled to summary judgment on Atkins' discrimination claim because Atkins has not identified a similarly situated employee that was treated more favorably and that, even if Atkins were to identify a similarly situated employee, Atkins cannot show that the VA's reasons for its actions were pretextual.

To prove a claim of discrimination under the indirect method, a plaintiff must first show that: (1) he is a member of a protected class, (2) he met his employer's legitimate job expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees outside of his protected class were treated more favorably. *McDonnell Douglas Corp.*, 411 U.S. at 802; *Lucas v. PyraMax Bank, FSB*, 539 F.3d 661, 666 (7th Cir. 2008). If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas Corp.*, 411 U.S.

7

at 802; *see Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). If the employer meets its burden, the burden shifts back to the employee to show that the employer's proffered reasons are pretextual. *McDonnell Douglas Corp.*, 411 U.S. at 803-04; *Raymond*, 442 F.3d at 610.

The VA argues that, "[a]t a bare minimum, Atkins cannot show the fourth element of a prima facie case" because he has not identified a similarly situated employee outside of his protected class who was treated more favorably. (Def.'s Mem. Supp. Summ. J. 7.) A similarly situated employee is someone who is directly comparable to the plaintiff in all material respects. *Raymond*, 442 F.3d at 610; *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 531-32 (7th Cir. 2003).

In this case, Atkins failed to identify a similarly situated employee and so failed to establish the fourth prong of his prima facie case of gender discrimination. Specifically, Atkins (a male) identified Ella Wright (a female) as a similarly situated employee. The parties do not dispute that Wright was employed by the VA as a housekeeping aid in 9 East and that Wright's pay grade was WG-3. The VA, however, produced unrefuted evidence that Wright originally was assigned to 9 East as a WG-2 and was promoted to WG-3 only after she applied for a promotion. (Def.'s Mem. Supp. Summ. J. Ex. 6, VA_0223, Ex. 11.) Although Atkins is similar to Wright inasmuch as both employees were VA housekeeping aids originally assigned to 9 East as WG-2s, Atkins admitted that he never applied for a promotion to WG-3 despite instruction by his supervisors to do so. Consequently, Atkins' circumstances are not directly comparable to Wright's because Atkins' argument is not that he was denied a promotion for which he applied because of his gender. Instead, Atkins argues that his managers wrongfully failed to

8

automatically promote him as required by VA policy. That, however, was not Wright's experience. Atkins identified no other female housekeeping aid that originally was assigned to 9 East, or any other work unit, as a WG-2 and automatically promoted to WG-3 by her managers. Atkins therefore has failed to established a prima facie claim of gender discrimination under the indirect method.

Atkins argues in his response brief that he also intended to proceed under the direct method. To establish a claim of gender discrimination under the direct method, a plaintiff must show that the employer's adverse employment decision was motivated by an impermissible purpose, such as plaintiff's gender. *See Raymond*, 442 F.3d at 610; *Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 529 (7th Cir. 2003). A plaintiff may demonstrate his employer's wrongful motivation by using direct or circumstantial evidence. *Id.* Direct evidence "essentially requires an admission by the decision maker that his actions were based upon the prohibited animus." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (internal quotation marks omitted). Circumstantial evidence requires a "convincing mosaic" of evidence from which a jury could infer intentional discrimination by the employer. *Id.* The "circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." *Id.* (internal quotations marks omitted).

Atkins has presented no direct evidence of gender discrimination. He instead has argued that a jury could infer that he was denied a promotion to WG-3 because of his gender from the fact that "[t]he female [whom] Plaintiff replaced was given the position and salary she deserved according to Hines VA policy on promotions." (Pl.'s Opp. Summ. J. 8.) First, the single fact that Atkins identified as circumstantial evidence of gender discrimination does not create a

9

"mosaic" of evidence. Second, a jury could not infer that the VA failed to promote Atkins, who did not apply for a promotion, *based on his gender* from the fact that the VA promoted a female housekeeping aid from WG-2 to WG-3 after she applied for a promotion. Third, Atkins identified no evidence establishing the scope of duties performed by WG-3 housekeeping aides or that he performed all the duties assigned to WG-3 housekeeping aids. In fact, the record evidence demonstrates at most that Atkins performed some duties performed by WG-3 housekeeping aids. A jury could not reasonably infer that the VA refused to promote Atkins because of his gender from the mere fact that Atkins performed some duties performed by a female housekeeping aid yet was maintained at a lower pay grade than the female housekeeping. Finally, Atkins points to no other evidence from which a jury could infer that the VA failed to promote him because of his gender. Consequently, Atkins has not demonstrated an issue of material fact through which he can dispute that the VA's failure to promote him was based on an impermissible motivation.

Because the VA has established that Atkins cannot establish a prima facie case of gender discrimination, the court need not address whether the VA's proffered reason for its actions was pretextual. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 787 (7th Cir. 2008) (instructing that plaintiff's claim necessarily fails if he cannot establish prima facie case).

    *B.    Retaliation*

The VA next argues that Atkins cannot establish a claim for retaliation arising out of his reassignment from 10 West to 10 East in May 2006 because (1) the transfer was not a materially adverse action, (2) Atkins did not identified a similarly situated employee outside his protected

class that was treated more favorably, and (3) Atkins cannot show that the VA's stated reasons for the transfer were pretextual.[1]

To prevail on a retaliation claim under Title VII, the plaintiff must first establish a prima facie case of retaliation. *Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008). To establish a prima facie case using the indirect method, the plaintiff must show that: (1) he engaged in statutorily protected activity, (2) he suffered a materially adverse action, (3) he met his employer's legitimate expectations, and (4) he was treated less favorably than a similarly situated employee who did not engage in statutorily protected activity. *Id.* To establish a prima facie case using the direct method, the plaintiff must show: (1) that he engaged in a statutorily protected activity, (2) that he suffered an adverse employment action, and (3) a causal connection between the protected activity and the adverse employment action. *Id.*

The court agrees with the VA that Atkins cannot establish a prima facie case of retaliation using the indirect method because he cannot establish essential elements of his claim. In particular, Atkins identified only Wright as being similarly situated and, for the reasons discussed above, Wright's circumstances are not directly comparable to Atkins' circumstances.

Even so, Atkins contends that he may proceed on his retaliation claim using the direct method of proof because, he says, Holland's declaration that he "concurred with Sparks' decision to reassign Atkins to 10 East precisely because Atkins was a WG-2 and had raised an issue about being improperly assigned to WG-3 area" is direct evidence of retaliation. (Pl.'s Opp. Summ. J. 10.) Atkins may proceed under the direct method only if he can show a causal connection

---

[1] Although Atkins complained during the administrative proceedings that his transfer from 9 East to 9 West in August 2002 was retaliatory, Atkins limited his claims in this action to events occurring "after he replaced Ella Wright." (Pl.'s Opp. Summ. J. 10.)

between his statutorily protected activity and the VA's subsequent adverse employment action. *See Argyropoulos*, 539 F.3d at 734. This is where Atkins' retaliation claim fails. The undisputed material facts show that Atkins first complained of gender discrimination on March 16, 2006, when he contacted a VA EEO counselor to complain about "discrimination" arising out of a reassignment announced by Sparks, but the decision to transfer Atkins to a unit other than 10 West had been made at least two weeks before March 16. Specifically, on or about March 2, 2006, Sparks informed Atkins that his work unit would be moving from 9 West to 10 West due to an upcoming renovation of the ninth floor. Sparks also informed Atkins that he would not be moving with his work unit to 10 West but would be reassigned to another area. Although Atkins moved with his unit to 10 West on March 27, 2006, he was notified approximately one month later that he was being reassigned to 10 East. There is no evidence in the record that Atkins complained of gender discrimination prior to Sparks' announcement of Atkins' transfer on March 2, 2006. Moreover, any complaint by Atkins that he had been treated differently than other housekeeping aids because he was a WG-2 does not constitute a protected activity under Title VII. *See* 42 U.S.C. §§ 2000e *et seq*. Consequently, Atkins cannot establish a causal connection between his complaints of gender discrimination and his transfer from 10 West to 10 East. *See Lucas*, 539 F.3d at 667 (concluding that plaintiff who was demoted before complaint of gender discrimination could not show causal connection between complaint and demotion).

    C.    *Hostile Work Environment*

The VA also argues that it is entitled to summary judgment on Atkins' hostile work environment claim because "the conduct alleged by Atkins is not the type of conduct that a

12

reasonable jury might consider unwelcome harassment, was not severe or pervasive, and lacks any connection to Atkins' EEO activity." (Def.'s Mem. Supp. Summ. J. 11.)

To prevail on a hostile work environment claim, the plaintiff must establish that: (1) he was subjected to unwelcome harassment, (2) the harassment was based on his gender; (3) the harassment was severe or pervasive enough to alter the conditions of his employment and create a hostile or abusive atmosphere, and (4) there is a basis for employer liability. *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 677 (7th Cir. 2005). A hostile work environment is one that is "permeated with discriminatory ridicule and insult." *Id.* at 678. In determining whether a work environment is sufficiently hostile, the court considers all of the circumstances, including the frequency and severity of the conduct, whether the conduct is physically threatening or humiliating or merely offensive, and whether the harassment unreasonably interferes with the employee's work. *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 645 (7th Cir. 2005); *Racicot*, 414 F.3d at 677-78. "Indeed, the threshold for plaintiffs is high, as the workplace that is actionable is one that is hellish." *Whittaker*, 424 F.3d at 645 (internal quotation marks omitted).

In this case, the "harassment" described by Atkins was not objectively severe or pervasive enough to create a hostile or abusive atmosphere and certainly did not rise to the level of hellish. Specifically, the events identified by Atkins as creating a hostile work environment were: (1) Sparks asked to inspect Atkins' work area and told Atkins that everything on VA property belonged to the VA, (2) Sparks instructed Atkins to dust and wet mop by the elevators when Atkins was preparing to go home, (3) Sparks changed Atkins' assignment after Atkins had received a different work assignment from his immediate supervisor, (4) Holland told Atkins that Sparks wanted Atkins to clean up the 1074 storage closet and remove certain items, (5) Sparks

13

issued a memorandum to Atkins documenting that Atkins had been absent from his work for 37 minutes without supervisory permission, and (6) Holland issued a second memorandum to Atkins for failure to attend a scheduled training session the day before. It is undisputed that these events occurred over a six week period following Atkins' formal complaint of gender discrimination. The events, however, show no threatening, humiliating, or offensive conduct directed toward Atkins, and the events did not unreasonably interfere with Atkins' work performance. Indeed, the events show supervisors doing what supervisors are hired to do—assigning duties to their staff, overseeing completion of the tasks, and ensuring that their staff adheres to company policy and procedure. Consequently, based on the undisputed material facts, Atkins cannot establish an objectively offensive work environment as required to proceed on this claim.

### D. *Equal Pay Act*

Finally, the VA contends that it is entitled to summary judgment in its favor on Atkins' Equal Pay Act claim. For purposes of this claim only, the VA assumes that Atkins can establish a prima facie case under the Equal Pay Act. The VA then argues that Atkins cannot prevail on his claim because it is undisputed that Atkins was not paid at the same rate as Wright because Wright applied for promotion to WG-3, went through a panel review process, and was selected through a merit promotion system, but Atkins did not.

To prove a claim under the Equal Pay Act, the plaintiff must establish a prima facie case of unequal pay by showing that (1) higher wages were paid to a female employee; (2) he and the female employee performed equal work requiring equal skill, effort, and responsibility; and (3) they had similar working conditions. *Warren v. Solo Cup* Co., 516 F.3d 627, 629 (7th Cir.

14

2008); *Cullen v. Ind. Univ. Bd. of Trustees*, 338 F.3d 693, 698 (7th Cir. 2003). Once the plaintiff has established a prima facie case, the burden shifts to the employer to show that the pay disparity was justified in one of four ways: (1) a seniority system, (2) a merit system, (3) a system which measures earnings by quantity or quality of production, or (4) a differential based on any other factor other than sex. *Warren*, 516 F.3d at 630; *Fallan v. Ill.*, 882 F.2d 1206, 1211 (7th Cir. 1989). "The fourth exception is a broad catch-all exception and embraces an almost limitless number of factors, so long as they do not involve sex." *Warren*, 516 F.3d at 630 (internal quotation marks omitted). Moreover, the employer's justification need not be a good one, it just must be gender-neutral and bona fide. *Id.*

The VA has carried its burden. The VA explained that, assuming Atkins could establish that he performed the same duties as Wright, the VA paid Wright a higher wage than Atkins because "she submitted a proper application, went through a panel review process, and was selected through a merit promotion system." (Def. Mem. Supp. Summ. J. 14.) Atkins does not dispute that he did not apply for a WG-3 salary, but points to a VA policy that, he says, entitles him to the same wage as Wright, with no action on his behalf. In pertinent part, the policy provides that:

> Except for brief periods, an employee should not be detailed to perform work of a higher grade level unless there are compelling reasons for doing so. When a detail will exceed 45 days, a temporary promotion should be made after the 45th day if the employee meets the legal and technical requirements. A detail of more than 120 days to a position with known promotion potential must be made under competitive promotion procedures.

> \* \* \*

> If the detail is to a higher graded position or to a position with promotion potential, the employee will be promoted after the 45th day (not to exceed 120 days) provided the employee meets technical requirements.

15

* * *

> Details for more than 120 days: If the position is at a higher grade than currently held by employees or has promotion potential, the selection for the detail must be made under competitive promotion procedures.

(Pl.'s Opp. Summ. J. Ex. A, VA_0258-59.) Although Atkins insists that the VA policy requires managers to automatically promote an employee who performs work at a higher grade level for in excess of 120 days, the policy actually instructs that the employee must proceed through the competitive promotion procedures for details at a higher grade that exceed 120 days. It is undisputed that Wright, through her own initiative, proceeded through the competitive promotion procedures to become a WG-3, and Atkins did not. Moreover, Atkins identified no evidence establishing that he consistently performed all the duties required of a WG-3 for a period of more than 45 days but fewer than 120 days *and* met the "legal and technical requirements." Consequently, the VA has undisputably established a bona fide, gender-neutral explanation for the differential in pay between Atkins and Wright.

Conclusion

For the foregoing reasons, the court grants summary judgment in favor of defendant R. James Nicholson, Secretary of Veterans Affairs. Judgment is ordered entered. The case is terminated in its entirety.

ENTERED:

*James F. Holderman*
_____
James F. Holderman
Chief Judge

Dated: March 9, 2009